# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | CIVIL ACTION NO. 1:17-CV-1466 |
| Plaintiff | (Chief Judge Conner) |
| v. | |
| BRIAN A. GERBER and TRACY L. GERBER, | |
| Defendants | |

## **MEMORANDUM**

Plaintiff U.S. Bank National Association ("U.S. Bank") filed a complaint in mortgage foreclosure against defendants Brian A. Gerber and Tracy L. Gerber ("the Gerbers"). In addition to answering the complaint and raising affirmative defenses, the Gerbers assert two counterclaims. U.S. Bank moves to dismiss both counterclaims under Federal Rule of Civil Procedure 12(b)(6) and also moves to strike many of the Gerbers' affirmative defenses. (Doc. 10). The court will grant U.S. Bank's motion to dismiss and will grant in part and deny in part the motion to strike.

## I. **Factual Background & Procedural History**

In 2007, the Gerbers borrowed $247,500 from HOMELOANADVISORS.COM and executed a promissory note in consideration for the loan. (Doc. 1 ¶ 8; Doc. 1-2, Ex. A; Doc. 8 at 2 ¶ 8, 19 ¶ 38). The loan was a refinance transaction, not a purchase-money loan. (Doc. 8 at 19 ¶ 38). The Gerbers secured the note with a mortgage, which offers as collateral real property located in Dillsburg, Pennsylvania. (Doc. 1

¶¶ 8, 12, 17; Doc. 8 at 2-3 ¶¶ 8, 12, 17). The Gerbers are the record owners of the mortgaged property, and the mortgage was duly recorded. (Doc. 1 ¶¶ 12, 18; Doc. 1-2, Ex. B; Doc. 8 at 3 ¶¶ 12 & 18, 19 ¶ 38).

According to U.S. Bank, HOMELOANADVISORS.COM indorsed the note to Encore Credit, and Encore Credit indorsed the note in blank.[1] (Doc. 1 ¶¶ 9-10). U.S. Bank claims that it currently possesses the original note. (Id. ¶ 11). U.S. Bank further asserts that HOMELOANADVISORS.COM assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), and MERS assigned the mortgage to Bank of America National Association ("Bank of America") as trustee for certain mortgage-backed securities. (Id. ¶ 14). Around the time of the assignment from MERS to Bank of America, the mortgage was "securitized."[2] (Doc. 8 at 11 ¶ 8). When U.S. Bank succeeded Bank of America as trustee for the mortgage-backed securities, Bank of America assigned the mortgage to U.S. Bank. (Doc. 1 ¶¶ 15-16; Doc. 8 at 3 ¶ 16). U.S. Bank avers that all of these mortgage assignments were duly recorded. (Doc. 1 ¶¶ 13, 14, 16; Doc. 1-2, Ex. C, D, E).

U.S. Bank alleges that beginning in March 2009 and continuing thereafter, the Gerbers failed to make loan payments as required under the note. (Doc. 1 ¶ 19). U.S. Bank avers that it provided the Gerbers notice of default and notice of its

---

[1] When a financial instrument is indorsed in blank, it does not specify a particular payee, and instead becomes payable to the possessor of the note. 10 C.J.S. *Bills & Notes* § 191 (Supp. 2018); 13 PA. CONS. STAT. § 3205(b).

[2] "Securitization is a process in which lenders transfer mortgage loans into a single pool or trust and sell interests in that pool or trust to investors who receive certificates entitling them to share in the stream of income generated by repayment of the underlying loans." In re Walker, 466 B.R. 271, 273 n.2 (Bankr. E.D. Pa. 2012).

2

intention to foreclose on the mortgaged property. (Id. ¶ 24; Doc. 1-2, Ex. G; Doc. 8 at 4 ¶ 24). U.S. Bank filed the instant complaint in mortgage foreclosure in August 2017. At that time, U.S. Bank claimed the Gerbers owed approximately $456,000 in outstanding principal, interest, escrow deficit, and costs. (Doc. 1 ¶¶ 21-22).

The Gerbers answered the complaint and raised 22 affirmative defenses. The Gerbers also assert two declaratory judgment counterclaims against U.S. Bank. U.S. Bank moves to dismiss both counterclaims under Rule 12(b)(6) and to strike many of the Gerbers' affirmative defenses under Rule 12(f). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing

3

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. FED. R. CIV. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson

4

v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). This deficiency must be apparent on the face of the pleading. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). The Third Circuit has indicated that the meaning of "the face of the complaint," as it relates to asserting affirmative defenses in a motion to dismiss, is coextensive with the general Rule 12(b)(6) limitations. Id.; see also Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 280 & n.52 (3d Cir. 2016) (citations omitted) (discussing raising affirmative defense of preclusion in Rule 12(b)(6) motion). Thus, the materials properly considered include not only the complaint but also matters of public record, exhibits attached to the complaint, and undisputed materials embraced by the complaint but provided by the defendant. Schmidt, 770 F.3d at 249; Hoffman, 837 F.3d at 280 & n.52.

### III. Discussion

U.S. Bank attacks the sufficiency of the Gerbers' counterclaims and moves to strike many of the Gerbers' affirmative defenses. We begin by addressing the Rule 12(b)(6) motion to dismiss.

#### A. Motion to Dismiss Counterclaims

The Gerbers' counterclaims seek relief under the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, which authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In other words, declaratory judgment actions are intended to adjudicate "rights and obligations prior to the enforcement of a remedy." Rarick v. Federated Serv. Ins. Co., 852 F.3d

5

223, 227 (3d Cir. 2017) (citations omitted). The Gerbers seek declaratory relief in two forms: *first*, a declaration of unilateral contract modification and, *second*, a declaration of rescission.

### 1. *Counterclaim Count I – Declaratory Judgment, Unilateral Contract Modification*

The Gerbers argue that the loan contract was unilaterally modified—and thus rendered unenforceable—when it was transferred into the securitized mortgage loan trust. (Doc. 8 at 11 ¶¶ 8-9). According to the Gerbers, "converting the residential mortgage loan transaction into a commercial investment vehicle" without their knowledge or consent was a unilateral modification prohibited by Pennsylvania law. (Id. at 13 ¶¶ 15-16). They further contend that because the note obligation was "paid in full" when it was securitized, their obligation to repay "under the [n]ote" is "phantom" and the court should declare the amount U.S. Bank claims is owed to be false and in fact repaid. (Id. at 11 ¶ 10, 17 ¶ 26(c), (d)).

The law is well settled that absent mutual assent by the contracting parties, the terms of an agreement cannot be modified by subsequent unilateral action. Shedden v. Anadarko E. & P. Co., 136 A.3d 485, 490 (Pa. 2016); Kreutzer v. Monterey Cty. Herald Co., 747 A.2d 358, 362 (Pa. 2000).[3] A modification is "[a] change to something, an alteration or amendment." *Modification*, BLACK'S LAW DICTIONARY (10th ed. 2014).

---

[3] Both parties agree that because this action relies on diversity of citizenship for federal jurisdiction, the substantive law of Pennsylvania applies. See Collins v. Mary Kay, Inc., 874 F.3d 176, 181 (3d Cir. 2017) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

6

The Gerbers argue that the essential character of their loan was altered when it was sold into a securitized trust. (Doc. 8 at 11-12 ¶¶ 10-12). The problem with this claim is that the Gerbers fail to plausibly plead exactly how the terms of their contract were unilaterally changed or amended. Their counterclaim baldly states that U.S. Bank and its predecessors-in-interest "(a) eliminated [the Gerbers'] rights under [f]ederal lending laws; (b) imposed several third-party 'servicers'; and (c) eliminated [the Gerbers'] ability to deal directly with the true and actual lender." (Id. at 13 ¶ 15). The Gerbers suggest that sale of the loan "eliminated" their abilities to refinance or restructure the loan and to deal directly with the lender. (Id. at 14-15 ¶ 21). These general assertions do not explain how the Gerbers' rights or obligations under the contract were modified. It is entirely unclear from the Gerbers' pleading exactly how their alleged "rights" to refinance or restructure were affected, where such rights are established in the contract, how different third-party loan servicers would alter the contract, how the Gerbers were unable to "deal directly" with the lender, or how any of these occurrences would amount to a contractual modification.

Moreover, transfer of the note and mortgage is not a modification. The note explicitly states: "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Doc. 1-2, Ex. A at 1). The mortgage likewise states: "The Note . . . (*together with this Security Instrument*) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as

the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument[.]" (Id., Ex. B at 14) (emphasis added).[4]

Under Pennsylvania law, "[a] note secured by a mortgage fits the plain language" of Pennsylvania's Uniform Commercial Code's definition of a "negotiable instrument." JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1265 (Pa. Super. Ct. 2013); 13 PA. CONS. STAT. § 3104. Such instruments are transferrable. 13 PA. CONS. STAT. § 3203. The Gerbers identify no authority that equates the transfer of a negotiable instrument with its modification. In short, the Gerbers' pleadings do not plausibly state a unilateral alteration, change, or amendment to the terms of their loan agreement.

The Gerbers' second assertion in this counterclaim—that the note was paid in full when securitized and therefore should be deemed repaid—also does not suffice to state a claim for relief. Federal courts have consistently rejected such an argument. "As a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his or her loan." Dauenhauer v. Bank of N.Y. Mellon, No. 3:12-CV-01026, 2013 WL 2359602, at *5 (M.D. Tenn. May 28, 2013) (collecting cases). Accordingly, the Gerbers' first counterclaim fails to state a claim for relief and must be dismissed.

---

[4] The Gerbers do not dispute the authenticity of the note and mortgage attached as exhibits to U.S. Bank's complaint and cross-referenced in its motion to dismiss. (See Doc. 8 at 2-3 ¶¶ 8, 12-13). The Gerbers also rely on these documents in their counterclaims. (See, e.g., id. at 11-12 ¶¶ 8, 10-12; 16 ¶ 25; 20 ¶ 44). Accordingly, these documents are properly considered at the Rule 12(b)(6) stage. Belichick, 605 F.3d at 230.

### 2. *Counterclaim Count II – Declaratory Judgment, Rescission*

The Gerbers next claim that they timely rescinded the loan and therefore can bring a declaratory judgment action against U.S. Bank based on the Truth in Lending Act ("TILA" or "the Act"), 15 U.S.C. §§ 1601-1667(f), to enforce that rescission. U.S. Bank contends that even if the Gerbers' allegations are true, the TILA-based rescission claim is years too late.

According to the counterclaim, the Gerbers were never provided certain financial disclosures required by the Act and corresponding regulations. (Doc. 8 at 20-21 ¶¶ 40-47). The Gerbers mailed written notice of rescission to the lender on December 4, 2009, the lender received the notice four days later, and the lender failed to properly respond within the required 20-day period set forth by the Act. (Id. at 21-22 ¶¶ 48-50). U.S. Bank argues that, as a consequence, the one-year statute of limitations to bring a declaratory judgment action to enforce the purported rescission expired in late December 2010. The Gerbers counter that notice of rescission was timely made and effective when issued, and contend that "there is no requirement in the statutory scheme" under the Act that "requires that a party institute an action to enforce the previously exercised rescission" within a certain time period. (Doc. 21 at 10). In making their arguments, both parties rely on Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. __, 135 S. Ct. 790 (2015).

The Supreme Court of the United States in Jesinoski addressed whether, under the Act, a borrower who does not receive the requisite financial disclosures must file suit within the three-year period set forth in Section 1635(f) to exercise the right of rescission, or must simply provide written notice of rescission within that

9

three-year period.  Jesinoski, 135 S. Ct. at 791.  The Court unanimously held that to exercise the right to rescind, only written notice to the lender was required, so long as the notice is provided within the three-year period following consummation of the transaction.  Id. at 793.

But Jesinoski does not answer the question *sub judice*.  In Jesinoski, the borrowers filed their action to enforce the rescission within one year after the lender responded by affirmatively denying the rescission's validity.  Id. at 791.  The Gerbers, by contrast, filed the instant TILA counterclaim to enforce the rescission more than *seven years* after the lender allegedly failed to properly respond to the Gerbers' written notice.  Thus, whether the Gerbers' TILA-based counterclaim to enforce the rescission is time-barred turns on whether a statute of limitations applies to such a claim, and if so, what that limitations period is.

The Third Circuit has not directly spoken on this issue.  In Sherzer v. Homestar Mortgage Services, 707 F.3d 255 (3d Cir. 2013), however, the court indicated that the time in which a borrower could sue to enforce a TILA-based notice of rescission was not indefinite.[5]  Sherzer, 707 F.3d at 265-66.  The court explained that a borrower "who has sent written notice of rescission to his lender but received no response will not be able to wait indefinitely before filing a lawsuit to enforce the rescission . . . because statutes of limitations will constrain his ability to file suit."  Id. at 265.  In an amicus brief, the Consumer Financial Protection Bureau suggested that the statute of limitations for such an action should be

---

[5] Sherzer predates Jesinoski, but correctly held that under the Act, rescission was effective when a borrower "with a *valid* TILA claim provides the lender with written notice."  Sherzer, 707 F.3d at 265.

10

borrowed from 15 U.S.C. § 1640(e) (concerning limitations on civil suits for violations of the Act) or an analogous state statute. Id. at 266 n.8. Because the borrowers had filed suit within six months after sending their notice of rescission, the court declined to reach the question of what statute of limitations applied. Id.

In the absence of explicit precedent, several district courts have endeavored to resolve this question. For example, in Jacques v. Chase Bank USA, N.A., No. 15-CV-548, 2016 WL 423770 (D. Del. Feb. 3, 2016), aff'd, 668 F. App'x 437 (3d Cir. 2016), the court acknowledged that the portion of the Act that pertained to rescission—15 U.S.C. § 1635—did not contain an express statute of limitations. Jacques, 2016 WL 423770 at *9 n.10. The court therefore borrowed the one-year limitations period from 15 U.S.C. § 1640(e), "the most closely analogous federal statute," and applied it to violations of rescissions under Section 1635(b). Id. at *9 & n.10. The Third Circuit, in a nonprecedential opinion, affirmed the district court's determination that the borrower's TILA-based rescission claim was time-barred under "the one-year" statute of limitations. Jacques, 668 F. App'x at 439.

Likewise, in Hoang v. Bank of America, N.A., No. 17-CV-0874, 2017 WL 5559846 (W.D. Wash. Nov. 16, 2017), appeal filed, No. 17-35993 (9th Cir. Dec. 11, 2017), the district court reasoned that a statute of limitations must apply to declaratory judgment actions seeking to enforce a "stalled rescission—where a lender ignores a borrower's written notice and the rescission process is held in limbo." Hoang, 2017 WL 5559846 at *8. In a thorough and well-reasoned analysis, the court explained that the mere "absence of an explicit limitations period for a borrower's declaratory relief claim does not mean that none should apply." Id. The

11

Hoang court directly disagreed with district courts that had found that a borrower's rescission-enforcement claim is timely no matter when it is brought. Id. (discussing and disagreeing with Paatalo v. JPMorgan Chase Bank, 146 F. Supp. 3d 1239, 1245-46 (D. Or. 2015), which allowed claim filed seven years after notice of rescission to proceed)). The Hoang court explained that failing to apply a statute of limitations to such declaratory relief claims risks borrowers only bringing this type of claim in response to a foreclosure action instituted years or possibly decades after a notice of rescission was allegedly provided. Id. Meanwhile, the borrower has been able to retain the property that secures the loan while neither making loan payments nor returning the property or loan proceeds to the lender. Id. The court further reasoned that the Act already provides a one-year limitations period for damages claims based on a lender's violation of Section 1635. Id. at *9. Thus, applying a similar statute of limitations to a declaratory relief claim seeking to enforce a rescission—a claim likewise "based on a lender's § 1635 violation—does not conflict with construing TILA's provisions liberally in favor of the consumer." Id.

We agree with the *ratio decidendi* of the Jacques and Hoang courts. We find that a one-year statute of limitations—borrowed from the most closely analogous federal statute, 15 U.S.C. § 1640(e)—applies to actions seeking to enforce a stalled

12

rescission.[6]  Our decision is bolstered by the Third Circuit's precedential opinion in Sherzer and its persuasive opinion in Jacques, both of which support applying a limitations period to such declaratory judgment rescission-enforcement actions.

General policy reasons undergirding limitations periods further support application of a statute of limitations here.  As the Supreme Court has explained, a statute of limitations protects against stale or unduly delayed claims, Credit Suisse Sec. (USA) LLC v. Simmonds, 566 U.S. 221, 227 (2012) (citation omitted), and is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974) (citation omitted).  It would be unjust to permit a borrower to bring an unduly delayed action to enforce a stalled rescission many years after providing notice of rescission—all the while keeping the property that secures the loan but not making loan payments and not tendering the property to the lender.

Applying Section 1640(e)'s one-year limitations period does not run afoul of Jesinoski's holding that rescission is effective upon provision of written notice.  As the Third Circuit explained in Sherzer, just because an affirmative claim to enforce rescission may be time-barred does not mean that a borrower could not "raise the

---

[6] A court can forego borrowing a state statute of limitations and instead apply an analogous federal limitations period only when "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." Reed v. United Transp. Union, 488 U.S. 319, 324 (1989) (citation omitted).  We find these requirements satisfied here and hold that Section 1640(e) provides the closest analogy for a statute of limitations for actions to enforce Section 1635 rescissions.

13

fact of rescission as a defense" in a foreclosure proceeding. Sherzer, 707 F.3d at 266 (citing Beach v. Ocwen Fed. Bank, 523 U.S. 410, 415 (1998)). Indeed, the Gerbers assert rescission in the instant case as their fifteenth affirmative defense. (Doc. 8 at 8-9).

We conclude the Gerbers' counterclaim seeking a declaratory judgment enforcing the rescission of the note and mortgage is time-barred on its face. This claim was filed over six years after expiration of the one-year statute of limitations applicable to such claims. Accordingly, we will dismiss the Gerbers' second counterclaim with prejudice.

### B. Motion to Strike Affirmative Defenses

Federal Rule of Civil Procedure 12(f) provides, in pertinent part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are generally disfavored and rarely granted. Mifflinburg Telegraph, Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (quoting Am. Standard Life & Accident Ins. Co. v. U.R.L., Inc., 701 F. Supp. 527, 531 (M.D. Pa. 1988)).

The Third Circuit has not yet considered whether the Twombly and Iqbal decisions affect the pleading requirements for affirmative defenses. Id. at 573. The consensus of district courts in this circuit is that the heightened pleading standard under Twombly and Iqbal does not apply to such defenses. See id.; Newborn Bros. v. Albion Eng'g Co., 299 F.R.D. 90, 97 (D.N.J. 2014) (collecting cases); Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011). Instead, the party asserting an affirmative defense must simply provide "fair notice" of the

nature of the defense.  Criswell, 80 F. Supp. 3d at 573; Tyco Fire Prods. LP, 777 F. Supp. 2d at 900 & n.5.  Fair notice, however, does not mean threadbare recitals.  The affirmative defense must include, at minimum, a concise "statement of the grounds for asserting an affirmative defense that demonstrates a logical relationship to the lawsuit," or it must "refer to general facts elsewhere in the parties' pleadings."  Criswell, 80 F. Supp. 3d at 574 (citing 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 1989)).

U.S. Bank moves to strike two groups of the Gerbers' affirmative defenses: defenses six through fourteen, and sixteen through twenty-two.  We address the challenges to these two groups *seriatim*.

### 1. *Affirmative Defenses Six through Fourteen*

Affirmative defenses six through fourteen primarily focus on the transfers of the note and mortgage between various institutions and into the securitization trust.  Many of these defenses oppugn the legitimacy of the transfers or assignments of the loan.

U.S Bank argues that the defenses in this first group are "insufficient as a matter of law," are disputed by the loan documents, or are meritless because the Gerbers lack standing to challenge the transfers.  These arguments miss the mark.  The Gerbers do not need to prove their defenses are correct or even plausible, nor do they need to establish standing to assert the defenses.  At this stage, the Gerbers need only provide fair notice to U.S. Bank of the nature of the defenses.  Affirmative defenses six through fourteen do just that.  They plead sufficient facts and establish a logical relationship to the lawsuit such that U.S. Bank is fairly on notice and thus

alerted "to the existence of the issue for trial." <u>Tyco Fire Prods. LP</u>, 777 F. Supp. 2d at 901.

We note, however, that the Gerbers' eighth "defense" appears to be nothing more than legal argument about standing to challenge a transfer of their mortgage loan to the securitization trust. (<u>See</u> Doc. 8 at 6-7). The Gerbers are certainly able to make such an argument during this litigation, but it is not an "affirmative defense" to U.S. Bank's foreclosure claim against them. <u>See</u>, <u>e.g.</u>, FED. R. CIV. P. 8(b), (c). Accordingly, out of the first group of defenses, we will strike only the eighth affirmative defense. The other defenses in this group are sufficient to withstand U.S. Bank's motion to strike.

### 2. *Affirmative Defenses Sixteen through Twenty-Two*

Affirmative defenses sixteen through twenty, *per contra*, are textbook examples of insufficient pleading. They consist entirely of bare-bones recitals of potential defenses without any factual or logical connection to U.S. Bank's lawsuit. For example, affirmative defense sixteen simply states: "The claims under the Complaint against [the] Gerbers . . . are barred by the doctrine of unclean hands." (Doc. 8 at 9). Defenses seventeen, eighteen, nineteen, and twenty differ only in the Rule 8(c)(1) defense generally asserted. (<u>Id.</u>) Consequently, these five affirmative defenses will be stricken. <u>See</u> <u>Criswell</u>, 80 F. Supp. 3d at 574.

The Gerbers' twenty-first defense states that to the extent U.S. Bank is culpable of spoliation of evidence, its claims "are barred." (Doc. 8 at 9). This general assertion is entirely speculative and untethered to the underlying facts or litigation. <u>Criswell</u>, 80 F. Supp. 3d at 573. Moreover, as U.S. Bank correctly notes,

16

spoliation is not an affirmative defense but rather an evidentiary doctrine.  See Donohoe v. Am. Isuzu Motors, Inc., 155 F.R.D. 515, 520 (M.D. Pa. 1994).  Thus, this defense will also be stricken.  If spoliation becomes relevant in this case, either party will be free to assert such a claim and seek an appropriate remedy.

Finally, the Gerbers' twenty-second defense states that they intend "to avail themselves of any and all additional defenses which may become known to them throughout the discovery process."  (Doc. 8 at 9).  This general reservation to assert additional defenses in the future is not an affirmative defense and contravenes the Federal Rules of Civil Procedure.  United States v. Sensient Colors, Inc., 580 F. Supp. 2d 369, 389 (D.N.J. 2008).  Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense" such that the opposing party has fair notice of what it must be prepared to address.  FED. R. CIV. P. 8(c); Gross v. Weinburg & Fox, LLC, 123 F. Supp. 3d 575, 583 (D. Del. 2015).  Rather than providing notice of a defense, the Gerbers' general reservation "injects only ambiguity into the pleadings and therefore violates Rule 8's notice requirement."  Sensient Colors, Inc., 580 F. Supp. 2d at 389.  Affirmative defense twenty-two, therefore, will also be stricken.  Id.; Gross, 123 F. Supp. 3d at 583.

**IV.    Conclusion**

The court will grant U.S. Bank's motion to dismiss and will grant in part and deny in part its motion to strike.  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    July 26, 2018