# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION AS TRUSTEE AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2007-HE7, <br><br> Plaintiff <br><br> v. <br><br> BRIAN A. GERBER and TRACY L. GERBER, <br><br> Defendants | CIVIL ACTION NO. 1:17-CV-1466 <br><br> (Chief Judge Conner) |

## **MEMORANDUM**

Plaintiff is U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association as Trustee as Successor by Merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE7 ("U.S. Bank"). U.S. Bank filed a complaint in mortgage foreclosure against defendants Brian A. Gerber and Tracy L. Gerber ("the Gerbers"). The Gerbers move to amend their answer and a counterclaim and for partial summary judgment as to one legal issue. (Docs. 33, 36). U.S. Bank moves for summary judgment on its

foreclosure action. (Doc. 38). We will grant in part and deny in part the Gerbers' motion to amend and deny the parties' cross-motions for summary judgment.

I. **Factual Background & Procedural History**[1]

In 2007, the Gerbers borrowed $247,500 from HOMELOANADVISORS.COM and executed a promissory note in consideration for the loan. (Doc. 39 at 7 ¶¶ 1-2; Doc. 1-2, Ex. A; Doc. 8 at 2 ¶ 8, 19 ¶ 38). The loan was a refinance transaction, not a purchase-money loan. (Doc. 39 at 7 ¶ 3; Doc. 8 at 19 ¶ 38). The Gerbers secured the note with a mortgage, which offers as collateral real property located in Dillsburg, Pennsylvania. (Doc. 39 at 8 ¶¶ 8, 14; Doc. 8 at 2-3 ¶¶ 8, 12, 17). The Gerbers are the record owners of the mortgaged property, and the mortgage was duly recorded. (Doc. 39 at 8 ¶¶ 8, 15; Doc. 1-2, Ex. B; Doc. 8 at 3 ¶¶ 12 & 18, 19 ¶ 38). A series of alleged indorsements and assignments then followed.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 34, 39, 44). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements.

It appears that the Gerbers failed to respond to U.S. Bank's Rule 56.1 statement, (see Doc. 39 at 7-11 ¶¶ 1-20), instead filing a counterstatement identifying additional facts the Gerbers deem to be material, (see Doc. 44). We decline to construe the Gerbers' nonconforming response as a *per se* admission to all facts in U.S. Bank's statement. Instead, we have considered the parties' statements and scrutinized the entire record to determine the uncontroverted facts of this matter.

According to U.S. Bank, HOMELOANADVISORS.COM indorsed the note to Encore Credit, and Encore Credit indorsed the note in blank. (Doc. 39 at 8 ¶¶ 5-6). U.S. Bank claims that it possesses the original note with indorsements. (Id. ¶ 7; Doc. 40, Ex. 1 ¶¶ 10-11). The Gerbers dispute the validity of the indorsements to Encore Credit and in blank. (Doc. 8 at 2 ¶¶ 9-10). HOMELOANADVISORS.COM assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") on July 23, 2007, which assignment was recorded several months later. (Doc. 39 at 8-9 ¶ 9; Doc. 39-1 at 10-15).

U.S. Bank maintains that some time after the mortgage was assigned to MERS and before September 1, 2007, the Gerbers' note and mortgage were properly deposited into the Bear Stearns Asset Backed Securities I Trust 2007-HE7, Asset-Backed Certificates, Series 2007-HE7 (the "Trust"). (Doc. 39 at 9 ¶ 10; Doc. 39-2 at 2). In other words, the mortgage was "securitized."[2] The Gerbers steadfastly dispute that their note and mortgage were ever transferred into the Trust. They aver that the "Cut-off Date" under the operative Trust Pooling and Servicing Agreement ("PSA") required the note and mortgage to be deposited by September 1, 2007, and contend that there is no evidence that such a transfer ever occurred. (See Doc. 39-2 at 17; Doc. 44 ¶¶ 4-5; Doc. 46 at 2-9).

---

[2] "Securitization is a process in which lenders transfer mortgage loans into a single pool or trust and sell interests in that pool or trust to investors who receive certificates entitling them to share in the stream of income generated by repayment of the underlying loans." In re Walker, 466 B.R. 271, 273 n.2 (Bankr. E.D. Pa. 2012).

3

The next purported assignment occurred in September 2010, when MERS assigned the mortgage to Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE7 ("Bank of America"). (Doc. 39 at 9 ¶ 11; Doc. 39-1 at 17-19; Doc. 44 ¶¶ 2, 5). This assignment was recorded approximately three months later. (Doc. 39-1 at 20). Finally, in October 2016, Bank of America allegedly assigned the mortgage to U.S. Bank, which had succeeded Bank of America as trustee. (Doc. 39 at 9 ¶¶ 12-13; Doc. 39-1 at 22-23; Doc. 44 ¶ 3). This assignment was recorded the following month. (Doc. 39-1 at 24).

Beginning in March 2009 and continuing thereafter, the Gerbers failed to make loan payments as required under the note. (Doc. 39 at 10 ¶ 16; Doc. 40, Ex. 9, B. Gerber Dep. 48:3-50:11; Doc. 40, Ex. 10, T. Gerber Dep. 19:16-21). U.S. Bank provided the Gerbers notice of default and notice of its intention to foreclose on the mortgaged property. (Doc. 39 at 10 ¶¶ 17-18; Doc. 39-1, Exs. 7-8).

In August 2017, U.S. Bank filed the instant complaint in mortgage foreclosure. At that time, U.S. Bank claimed the Gerbers owed approximately $456,000 in outstanding principal, interest, escrow deficit, and costs. (Doc. 1 ¶¶ 21-22). U.S. Bank avers that, as of July 17, 2018, this amount now stands at $479,075. (Doc. 39 at 11 ¶ 19). The Gerbers answered the complaint, raised 22 affirmative defenses, and asserted two declaratory judgment counterclaims. On motion by U.S. Bank, we struck eight affirmative defenses and dismissed the counterclaims, one with prejudice and one without.

The Gerbers move for leave to amend,[3] seeking to add another affirmative defense and to re-plead the counterclaim that was dismissed without prejudice. The Gerbers also move for partial summary judgment on a discrete legal issue. U.S. Bank moves for summary judgment on its foreclosure action. The motions are fully briefed and ripe for disposition.

## II. Legal Standards

### A. Leave to Amend

Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). In the seminal case of Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court of the United States provided guidance for when leave to amend may be denied. Circumstances that weigh against granting leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. Foman, 371 U.S. at 182. Rule 15 aims to offer the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." United States v. Thomas, 221 F.3d 430, 435 (3d Cir. 2000) (citations omitted).

---

[3] The Gerbers' initial motion (Doc. 29) to amend was filed several hours before we issued our memorandum and order regarding U.S. Bank's Rule 12 motion. The Gerbers have moved for leave to amend their initial motion to amend, which essentially moots their original filing. (See Doc. 36). We will therefore only address the Gerbers' most recent motion to amend.

5

### B. Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

### III. Discussion

The Gerbers move for leave to amend their answer to add an affirmative defense and to reassert a dismissed counterclaim. U.S. Bank opposes the proposed

6

amendments as unduly delayed and futile. We will address the motion to amend before turning to the parties' Rule 56 arguments.

### A. Motion to Amend

The Gerbers' initial responsive pleading asserted a counterclaim for declaratory relief based on an alleged unilateral modification of their mortgage loan. In our July 26, 2018 opinion, we dismissed the first iteration of this claim, explaining that the Gerbers had failed "to plausibly plead exactly how the terms of their contract were unilaterally changed or amended" when their loan was purportedly securitized. U.S. Bank Nat'l Assoc. v. Gerber, No. 1:17-CV-1466, 2018 WL 3585084, *3 (M.D. Pa. July 26, 2018). We held that the counterclaim failed Rule 12(b)(6) scrutiny because it did not identify where the alleged rights were established in the original contract or how those "rights or obligations under the contract were modified" upon securitization. Id.

The proposed amended counterclaim does not cure its prior deficiencies. The Gerbers provide some additional facts, but those facts do not address the shortcomings that we identified when dismissing the first version of this claim. For example, the Gerbers now aver that securitization of the mortgage loan changed the essence of their obligation from making payments on the note to an established lender to "fund[ing] an income stream to pay numerous non-parties," which "was a unilateral modification of the loan contract" to which the Gerbers did not consent. (Doc. 36-3 at 12 ¶ 9). The Gerbers also assert that the loan was paid in full upon transfer to the Trust, creating a "phantom obligation" to repay under a nonexistent, liquidated note, which is a "unilateral modification of the loan

7

contract." (Id. ¶ 10). They further allege that a unilateral change was effected because "any request to modify the payment terms of the loan would be subject to the discretion of" third-party servicers or a percentage of investors and because "a precondition of being considered for loan modification" was being in default. (Id. at 13-14 ¶ 12, 16 ¶ 21).

Many of these proposed additions provide mere legal conclusions, which we must reject. See Santiago v. Warminster Township, 629 F.3d 121, 131-32 (3d Cir. 2010). More importantly, as we stressed in our prior opinion, the Gerbers fail to identify *any* provision of their note or mortgage that has been changed through the securitization process. See Gerber, 2018 WL 3585084, at *3. To state a claim for unilateral contract modification, one must, quite logically, set forth how the agreement's original rights or obligations have been changed. See *Modification*, BLACK'S LAW DICTIONARY (10th ed. 2014). Simply alleging that an agreement is now different, without identifying how its original terms have purportedly been altered, is plainly insufficient. We will therefore deny leave to amend to reassert the proposed counterclaim due to futility of amendment. See U.S. *ex rel.* Schumann v. Astrazeneca Pharm., L.P., 769 F.3d 837, 849 (3d Cir. 2014). And we decline to give the Gerbers a third bite at the apple; dismissal will be with prejudice for repeated failure to cure the deficiencies in this claim. See id.

The Gerbers also seek leave to add an affirmative defense of economic duress. U.S. Bank argues that the Gerbers have not proffered good cause for the delay in raising this defense and that U.S. Bank will be prejudiced if amendment is permitted. We disagree. The Gerbers first asserted economic duress after certain

8

details surfaced during Brian Gerber's deposition and before the close of discovery. To the extent U.S. Bank perceives any potential prejudice due to its inability to examine Brian Gerber about this defense, we see no reason why U.S. Bank may not seek to re-depose him as to this limited issue. The Gerbers themselves make this suggestion, indicating that they will not oppose such a request. (See Doc. 43 at 4). Accordingly, we will grant leave to amend insofar as the Gerbers will be permitted to assert an affirmative defense of economic duress as set forth in their proposed amended answer. (See Doc. 36-2 at 7).

**B.     Motions for Summary Judgment**

The Gerbers' partial summary judgment motion concerns a single legal issue: whether, because their loan was never legally or properly transferred into the Trust before the cut-off date, U.S. Bank (as successor trustee) has no legal right—or standing—to foreclose on the Gerbers' mortgage. U.S. Bank moves for summary judgment on its action in mortgage foreclosure. Because these cross-motions are inextricably intertwined, we will address them together but will separate pertinent legal issues and arguments raised by the parties.

### 1.     *Transfer into the Trust and the PSA*

The Gerbers' argument may be summarized as follows. The PSA unequivocally establishes a cut-off date of September 1, 2007, by which time mortgages to be securitized must have been deposited into the Trust through specific procedures set forth in the PSA. The Gerbers' note and mortgage were allegedly assigned to MERS on July 23, 2007, leaving roughly 40 days in which to be deposited into the Trust pursuant to the terms of the PSA. There is no evidence—

beyond their loan being listed on the PSA's attached, undated, and undetailed Mortgage Loan Schedule[4]—that their note and mortgage were properly and timely deposited into the Trust.  In fact, the Gerbers observe, the only Rule 56 record evidence of transfer following assignment to MERS in 2007 is an alleged assignment by MERS to Bank of America (as successor trustee) in 2010, three years *after* the cut-off date and over a year after the mortgage went into default.  According to the Gerbers, because Bank of America was acting as trustee for the Trust, there is no legally permissible way MERS could have assigned a defaulted mortgage to Bank of America three years after the Trust's closing date, as this would have violated multiple provisions of the PSA as well as federal regulations.  Because no 2010 assignment was possible to Bank of America as trustee, no 2016 assignment was possible from Bank of America to U.S. Bank as successor trustee.  Thus, the Gerbers claim, U.S. Bank never acquired their note and mortgage and therefore has no legal right to foreclose.

  U.S. Bank's response is twofold.  First, U.S. Bank contends that the record evidence "conclusively" establishes that the Gerbers' note and mortgage were properly deposited into the Trust.  Second, U.S. Bank posits that the Gerbers are not parties to the mortgage assignments or the PSA, and thus have no right to

---

[4] The "Mortgage Loan Schedule" is a comprehensive list of the loans that were allegedly pooled together and securitized into the Trust.  (See Doc. 39-2 at 21). The list was attached to the PSA as "Exhibit B."  (Id.)  The schedule contains loan information including, *inter alia*, the location of the property, mortgage interest rate, type of interest rate, principal balance, and maturity date.  (Id.)

challenge the validity of, or compliance with, those contracts. We disagree with both of U.S. Bank's arguments.

### a. Proper Deposit into the Trust

U.S. Bank maintains that the record evidence indisputably demonstrates that the Gerbers' note and mortgage were properly securitized. For support, U.S. Bank relies on the Mortgage Loan Schedule to the PSA and the deposition testimony of its corporate designee, Patrick Pittman ("Pittman").

As the Gerbers observe, the Mortgage Loan Schedule is simply a list of numerous mortgage loans that were allegedly pooled together and securitized. Noticeably absent from the schedule, however, is any detail about when or how the listed loans were deposited into the Trust or when the schedule was created. Section 2.01 of the PSA mandates specific procedures for transferring loans into the Trust. (See Doc. 39-2 at 41). In particular, the Depositor, Bearn Stearns Asset Backed Securities I LLC ("Bear Stearns"), must deliver (1) the original note indorsed in blank (when registered on the MERS system); (2) the original or a true copy of the recorded mortgage; (3) an original or true copy of all intervening recorded assignments; and (4) proof of title insurance. (Id.) The PSA also requires the Seller, EMC Mortgage Corporation ("EMC"), to indicate in the MERS system that each deposited mortgage loan has been assigned by EMC to Bear Stearns and by Bear Stearns to the original Trustee (LaSalle Bank National Association ("LaSalle Bank")) for the benefit of the certificateholders under the PSA. (Id.)

As the PSA makes clear, there were multiple assignments involved in the securitization of the pooled loans. We count at least three for which we have no

record evidence: assignment to EMC, the purported seller of all securitized loans; assignment from EMC to Bear Stearns; and assignment from Bear Stearns to LaSalle Bank as trustee. Presumably, these assignments would be tracked through the MERS system, rather than individually recorded in local recording offices.[5]

U.S. Bank has proffered no evidence from the MERS system or otherwise that would establish that the Gerbers' note and mortgage followed the process outlined in the PSA. The only record evidence of any assignment following the July 23, 2007 assignment from HOMELOANADVISORS.COM to MERS is the 2010 assignment from MERS to Bank of America as successor trustee. We find it difficult to believe that no less than three assignments of a $247,500 promissory note and mortgage occurred without *any* evidence to show that ownership changed hands. The MERS system was specifically designed for this purpose. Consequently, the mere existence of the Gerbers' mortgage on the Mortgage Loan Schedule, while some proof of proper transfer into the Trust, is by no means "conclusive."

Even less convincing is the deposition testimony of U.S. Bank's corporate designee. Pittman's elusive and circular responses do little to bolster U.S. Bank's position. Pittman was repeatedly asked by the Gerbers' attorney what evidence

---

[5] "MERS facilitates the secondary market for mortgages by permitting its members to transfer the beneficial interest associated with a mortgage—that is, the right to repayment pursuant to the terms of the promissory note—to one another, *recording such transfers in the MERS database* to notify one another and establish priority, instead of recording such transfers as mortgage assignments in local land recording offices." Montgomery County v. MERSCORP Inc., 795 F.3d 372, 374 (3d Cir. 2015) (emphasis added).

12

exists to prove that the Gerbers' note and mortgage were timely and properly transferred into the Trust per the terms of the PSA. (Doc. 40, Ex. 11, Pittman Dep. 81:1-86:24). Pittman's response, essentially, was that the loan was transferred by the cut-off date because it was listed on the attached Mortgage Loan Schedule and the PSA required all such loans to be deposited by the cut-off date. (See id.) In other words, the loan *was* deposited into the Trust by September 1, 2007, because it *was required to be* deposited into the Trust by September 1, 2007. We do not find such testimony compelling or decisive. In light of the competing evidence, we find that a genuine dispute of material fact remains regarding proper deposit into the Trust.

### b. **Validity of Assignments**

U.S. Bank's primary argument is that, regardless of whether the note and mortgage were properly transferred into the Trust, the Gerbers cannot challenge the assignments or compliance with the PSA because the Gerbers are not parties to those contracts. This argument misses the mark.

U.S. Bank relies on case law that either applies or extends the legal maxim that a plaintiff who is not a party to, or a third-party beneficiary of, a contract lacks standing to sue for violation of that contract. (See Doc. 41 at 12 (citing, *inter alia*, Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278 (Pa. Super. Ct. 2010))). We agree with this settled tenet, but disagree that it applies to the case *sub judice*. The Gerbers are not plaintiffs, nor are they suing on a contract to which they are not a party. They are homeowner defendants in a mortgage foreclosure action asserting, as a defense, that their mortgage was never legally transferred to the

13

entity attempting to foreclose. They rely on the 2010 and 2016 assignments and the PSA only as *evidence* that there was never a valid assignment or transfer of interest to Bank of America or U.S. Bank, and therefore U.S. Bank has no standing to maintain a foreclosure action against them.

This is a permissible challenge. The Gerbers are not alleging a mere defect in the assignment that would render the assignment voidable; they are contending that any assignment to Bank of America or U.S. Bank was legally invalid and void *ab initio*. This distinction makes all the difference:

> A debtor may, generally, assert against an assignee . . . any matters rendering the assignment *absolutely invalid or ineffective*, and the *lack of the plaintiff's title or right to sue*; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor[.]

6A C.J.S. *Assignments* § 133 (2016) (emphasis added). As multiple courts have recognized, a homeowner debtor may challenge the validity of a mortgage assignment if claiming that the alleged assignment was void (rather than voidable) and thus the assignee never took title. See Reinagel v. Deutsche Bank Nat'l Tr. Co., 735 F.3d 220, 224-25 & n.8 (5th Cir. 2013); Conlin v. Mortg. Elec. Registration Sys., Inc., 714 F.3d 355, 361 (6th Cir. 2013); Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290-91 (1st Cir. 2013); Slorp v. Lerner, Sampson & Rothfuss, 587 F. App'x 249, 255-56 (6th Cir. 2014) (nonprecedential). U.S. Bank's sweeping contention that the validity of an assignment can never be challenged by a non-party to the assignment goes too far. Under such a theory, as long as a foreclosing entity claimed assignment of a mortgage—no matter how tenuous that claim may be—the

14

debtor homeowner would be powerless to challenge the purported assignee's right to foreclose.  See Reinagel, 735 F.3d at 225; Culhane, 708 F.3d at 290-91.

The Gerbers contend that the 2010 and 2016 assignments are void *ab initio* because it was legally impossible for MERS to assign their note and mortgage to a trustee for a securitization trust three years after that trust closed.  U.S. Bank has provided no authority—from Pennsylvania or elsewhere—indicating that such a transfer is legally permissible or would create only a voidable defect in the assignment.  Accordingly, the general law regarding non-party challenges to contracts does not bar the Gerbers from asserting their defense that legal title never vested in U.S. Bank, depriving U.S. Bank of standing to foreclose.  However, because U.S. Bank has proffered some evidence of proper deposit into the Trust— and may be able to provide more—we will deny the Gerbers' motion for partial summary judgment on this issue.

### 2. *Holder in Due Course*

We raise *sua sponte* the potentially dispositive issue in this case: U.S. Bank may be a holder in due course of a negotiable instrument, which, regardless of validity of assignment, would give U.S. Bank standing to foreclose.  Under Pennsylvania law, "a note secured by a mortgage fits the plain language" of Pennsylvania's Uniform Commercial Code's definition of a "negotiable instrument." JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1265 (Pa. Super. Ct. 2013); 13 PA. CONS. STAT. § 3104.  According to U.S. Bank, the Gerbers' note was indorsed

to Encore Credit, which then indorsed the note in blank.[6] When a financial instrument is indorsed in blank, it does not specify a particular payee, and instead becomes payable to the possessor of the note. 10 C.J.S. *Bills & Notes* § 191 (Supp. 2018); 13 PA. CONS. STAT. § 3205(b). A possessor of a negotiable instrument indorsed in blank is entitled to enforce that note as a "holder in due course" if the holder took the instrument, *inter alia*, for value and in good faith. 13 PA. CONS. STAT. §§ 3104(a)(1); 3109(a)(2); 3203(a), (b); 3301(1); 3302(a); see also PHH Mortg. Corp. v. Powell, 100 A.3d 611, 619-20 (Pa. Super. Ct. 2014).

U.S. Bank avers that it possesses the original note indorsed in blank. (Doc. 39 at 8 ¶¶ 5-7). If U.S. Bank can establish it is a holder in due course, "it will be entitled to enforce the note against [the Gerbers] even if there remain questions as to the chain of possession of the [n]ote from the time of its making to its arrival in [U.S. Bank]'s figurative hands." Murray, 63 A.3d at 1268 (citing 13 PA. CONS. STAT. § 3109(a)); Powell, 100 A.3d at 621. This is because ownership of the note and the right to enforce it are two distinct concepts. See Powell, 100 A.3d at 621; 13 PA. CONS. STAT. § 3203 cmt. 1.

The Gerbers dispute both possession and proper indorsement. (Doc. 8 at 2-3 ¶¶ 8-11; see id. at 4-6). U.S. Bank has not indicated that it has produced the note and allonges for inspection, which Pennsylvania courts have found to be critical when possession is contested. See Murray, 63 A.3d at 1266-67; Powell, 100 A.3d at 620-21. As the record currently stands, we are unable to find as a matter of law that

---

[6] These indorsements appear on allonges to the note.

16

U.S. Bank was validly assigned the Gerbers' mortgage or is a holder in due course of the related note. Hence, we must deny U.S. Bank's motion for summary judgment because U.S. Bank has not sufficiently demonstrated it has the right to foreclose.[7] This denial will be without prejudice to the right of U.S. Bank to reassert its motion for summary judgment following further development of the record.

## IV. Conclusion

We will grant in part and deny in part the Gerbers' motion to amend. The Gerbers may file an amended answer in conformity with the foregoing discussion. We will deny the parties' cross-motions for summary judgment without prejudice. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: March 21, 2019

---

[7] Even if U.S. Bank had conclusively established that it has standing to foreclose, summary judgment would still be inappropriate due to the existence of multiple affirmative defenses raised by the Gerbers, including rescission of the loan under the Truth in Lending Act. See Gerber, 2018 WL 3585084, at *4, 6; (Doc. 46 at 11-14). U.S. Bank does not address these defenses in its Rule 56 submissions.